IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

NO. 23-2808

**UNITED STATES OF AMERICA,**

**APPELLEE,**

**v.**

**JAE BERNARD,**

**APPELLANT.**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
HONORABLE C.J. WILLIAMS,
U.S. DISTRICT COURT JUDGE

**APPELLANT'S BRIEF**

STOWERS & NELSEN PLC
James S. Nelsen AT0005675
West Glen Town Center
650 S. Prairie View Drive, Suite 130
West Des Moines, IA 50266
Telephone: (515) 224-7446
Fax: (515) 225-6215
Email: james@stowersnelsen.com
ATTORNEY FOR APPELLANT

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Mr. Bernard was charged with a violation of 18 U.S.C. 922(g)(9) on or about January 6, 2022, relating to a misdemeanor domestic assault conviction from 2002. Bernard filed a motion to dismiss based upon the Supreme Court's holding in *Bruen*. The motion was denied without hearing by order of the Honorable C.J. Williams, on or about December 5, 2022. Appellant then entered into a conditional plea agreement and entered a guilty plea to a violation of 18 U.S.C. §922(g)(9) on or about December 27, 2022. Bernard was sentenced to 37 months on or about July 26, 2023.

Bernard filed a timely notice of appeal and contends the district court erred in denying the motion to dismiss in this matter. Bernard respectfully requests 10 minutes for oral argument.

i

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT……...i

TABLE OF CONTENTS…………………………………………………..ii

TABLE OF AUTHORITIES…………………………………………....iv

JURISDICTIONAL STATEMENT…………………………………….....1

STATEMENT OF THE ISSUES………………………………………..2

STATEMENT OF THE CASE…………………………………………3

SUMMARY OF THE ARGUMENT………………………………........5

ARGUMENT………………………………………………………....7

I.      THE GOVERNMENT FAILED TO MEET THE BURDEN OF ESTABLISHING A HISTORICAL ANALOGUE CONSISTENT WITH A PERMANENT BANISHMENT OF SECOND AMENDMENT RIGHTS UNDER 18 U.S.C. § 922(G)(9)…………………………………………..7

      A.     THE STANDARD OF REVIEW IS DE NOVO GIVING NO DIFFERENCE TO DISTRICT COURT'S DECISION……………...7

      B.     THE GOVERNMENT PRESENTED NO COMPETENT EVIDENCE TO MEET THE BURDEN REQUIRED BY *BRUEN*….7

II.     THE DISTRICT COURT ERRED IN CONCLUDING THE PERMANENT BAN ON FIREARM POSSESSION OUTLINED IN 18 U.S.C. §922(g)(9) IS CONSISTENT WITH THE NATION'S TRADITION OF FIREARM REGULATION………………………………………………………..11

      A.     THE STANDARD OF REVIEW IS DE NOVO GIVING NO DIFFERENCE TO DISTRICT COURT'S DECISION…………...11

      B.     NO COMPARABLE BURDEN WHICH IS COMPARABLY JUSTIFIED EXISTS TO SUPPORT THE CONCLUSION THAT THE PERMANENT PROSCRIPTION OF FIREARM

Appellate Case: 23-2808    Page: 3    Date Filed: 11/08/2023 Entry ID: 5334120

POSSESSIONS BY PERSONS CONVICTED OF MISDEMEANOR
OFFENSES 18 U.S.C. §922(g)(9) IS CONSTITUTIONAL………..11

CONCLUSION……………………………………………………………...21

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS……..23

CERTIFICATE OF SUBMISSION AND VIRUS SCAN………………...…...24

CERTIFICATE OF SERVICE…………………………………………………25

Appellate Case: 23-2808    Page: 4    Date Filed: 11/08/2023 Entry ID: 5334120

# TABLE OF AUTHORITIES

**<u>Cases</u>**

Carolyn B. Ramsey, *Firearms in the Family*, 78 Ohio St. L.J. 1257, 1301 (2017)…………………………………………………………………………...18

*District of Columbia v. Heller*, 554 U.S. 570 (2008) …………………..7, 12-17, 19

*Kanter v. Barr*, 919 F.3d 437, 454, 456-58 (7th Cir. 2019)………………………..18

*McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767, 130 S. Ct. 3020 (2010)……………………………………………………………………………….12-13

*New York State Rifle & Pistol Ass'n. v. Bruen*, 142 S.Ct. 2111 (2022)……....i, 3-5, 7-13, 15, 19, 21

*Range v. Attorney General of the United States*, 53 F.4th 262 3rd Cir. (Pa.), November 16, 2022………………………………………………………………….20

*U.S. v. Boyd*, 180 F.3d 967 (8th Cir. 1999)…………………………………………..16

*U.S. v. Boykin*, 986 F.2d 270 (8th Cir. 1993)………………………………………...16

*United States v. Cunningham*, 70 F.4th 502 (8th Cir. 2023)………………………..19

*United States v. Harrison*, United States District Court, W.D. Oklahoma, ---F.Supp.3d---2023 WL1771138 (February 3, 2023)………………………………….20

*United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023)……………………….....11, 19

*United States v. Nutter*, No. 2:21-cr-142, 2022 WL3718518 (S.D. W. Va. Aug. 29, 2022)…………………………………………………………………………………11

*United States v. Perez-Gallan*, 640 F. Supp.3d 697, 703 (2022)…………………....17

*United States v. Prince*, United States District Court, N.D. Illinois, Eastern Division, -- F.Supp.3d---2023 WL7220127 (November 2, 2023)………………....20

*United States v. Rahimi*, 61 F. 4th 443, 455 (5th Cir. 2023)…………………….8, 20

Appellate Case: 23-2808    Page: 5    Date Filed: 11/08/2023 Entry ID: 5334120

*United States v. Rodriguez*, 581 F.3d 775 (8th Cir. 2009)………………………7, 11

*U.S. v. Scarborough*, 431 U.S. 563 (1977)…………………………………………..15

**Other Authorities**

18 U.S.C. §921(a)(3)…………………………………………………………...15

18 U.S.C. §921(a)(30)…………………………………………………………..15

18 U.S.C. §922(g)……………………………………………………………20

18 U.S.C. §922(g)(1)…………………………………………………………...19

18 U.S.C. §922(g)(9)…………………………………………i, 1, 3-6, 9, 12, 15-16, 19, 21

18 U.S.C. §3231…………………………………………………………………1

21 U.S.C. §841a……………………………………………………………….3

21 U.S.C. §841(b)(1)(A)………………………………………………………….3

21 U.S.C. §846………………………………………………………………...3

28 U.S.C. §1291…………………………………………………………………1

Second Amendment to U.S. Constitution………………………...5-8, 10, 12-16, 19

Fifth Amendment to U.S. Constitution…………………………………………..5

Sixth Amendment to U.S. Constitution…………………………………………5

Fourteenth Amendment to U.S. Constitution…………………………………12-13

Black's Law Dict., Bryan Garner, (2d Pocket Ed. 2001)…………………………..9

Joseph Blocher, *Domestic Violence and the Home-Centric Second Amendment*, 27 Duke J. Gender L. & Pol'y 45, 55-56 (2020)…………………………………..17

v

## JURISDICTIONAL STATEMENT

Bernard appeals from the judgment of conviction in this matter entered against him on July 26, 2023, in the Northern District of Iowa, on one count of Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. §922(g)(9).  The United States District Court had jurisdiction over Bernard's federal criminal case pursuant to 18 U.S.C. § 3231 (2012).  This court has jurisdiction of the appeal pursuant to 28 U.S.C. § 1291.  Bernard filed a timely notice of appeal on August 9, 2023, from the judgment formally entered on July 26, 2023.

Appellate Case: 23-2808    Page: 7    Date Filed: 11/08/2023 Entry ID: 5334120

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

I.    THE GOVERNMENT FAILED TO MEET THE BURDEN OF ESTABLISHING A HISTORICAL ANALOGUE CONSISTENT WITH A PERMANENT BANISHMENT OF SECOND AMENDMENT RIGHTS UNDER 18 U.S.C. § 922(G)(9)

*New York State Rifle & Pistol Ass'n. v. Bruen*, 142 S.Ct. 2111 (2022).

II.    THE DISTRICT COURT ERRED IN CONCLUDING THE PERMANENT BAN ON FIREARM POSSESSION OUTLINED IN 18 U.S.C. §922(g)(9) IS CONSISTENT WITH THE NATION'S TRADITION OF FIREARM REGULATION

*New York State Rifle & Pistol Ass'n. v. Bruen*, 142 S.Ct. 2111 (2022).

Appellate Case: 23-2808    Page: 8    Date Filed: 11/08/2023 Entry ID: 5334120

## STATEMENT OF THE CASE

Nature of the Case: This is a direct appeal by Mr. Jae Bernard from his conviction following a conditional plea to a violation of 18 U.S.C §922(g)(9) in the Northern District of Iowa. Mr. Bernard appeals his conviction.

Factual and Procedural Background:

Mr. Bernard was charged in count one of a three count Indictment with a violation of 21 U.S.C. § 846, §841a, and §841(b)(1)(A) on or about January 6, 2022. (R. Doc. 3). The offense subjected Mr. Bernard to a maximum of ten years in prison, if convicted.

The indictment alleged that on or about September 29, 2021, Mr. Bernard possessed multiple firearms knowing he had been convicted of a crime of domestic violence. (R. Doc. 3). The Indictment alleged Mr. Bernard had been convicted of the misdemeanor offense of domestic abuse assault on or about April 12, 2002. (R. Doc. 3). Mr. Bernard was alleged to have possessed multiple firearms, none of which were alleged to have been unlawful to possess but for Bernard's status. (R. Doc. 3).

Mr. Bernard entered a plea on or about June 9, 2022. On June 22, 2022, the United States Supreme Court issued the opinion in *New York State Rifle and Pistol Ass'n. v. Bruen*. Mr. Bernard subsequently moved to withdraw his plea and dismiss the Indictment in reliance upon *Bruen*. Mr. Bernard asserted that under

3

*Bruen* there was no historical precedent for a regulation consistent with 18 U.S.C. §922(g)(9) and the punitive provisions contained therein were thus unconstitutional. (R. Doc. 54).

No hearing was held on Bernard's Motion to Dismiss and the Government presented no evidence. The Government filed a resistance to the motion to dismiss and a brief in support thereof. The court concluded that the provision of 18 U.S.C. §922(g)(9) were constitutional and denied the Motion to Dismiss. (R. Doc. 71).

A Conditional Plea Agreement was subsequently entered which allowed Defendant to appeal the denial of the Motion to Dismiss. (R. Doc. 78). The plea was accepted, and on July 26, 2023, Bernard was sentenced to 37 months. (R. Doc. 115).

Bernard now appeals.

4

## SUMMARY OF THE ARGUMENT

The district court erred in denying the Motion to Dismiss in violation of Mr. Bernard's Due Process Rights pursuant to the Fifth and Sixth Amendments and Right to Bear Arms pursuant to the Second Amendment to the United States Constitution.

The government failed to meet their burden as required by *Bruen*. The Supreme Court in *Bruen* determined that to regulate rights enumerated in the Second Amendment, the burden is upon the government to affirmatively establish the regulations are consistent with the historical scope of the Second Amendment. No hearing was held on this matter, and no competent evidence was presented before the district court. The government submitted a brief in support of their position. The government asserted that cited articles, not admitted into evidence through adversarial process, and citations to cases which relied upon such articles, established a history of disarmament of misdemeanants. The government presented no evidence and failed to establish their burden.

The court committed procedural error by considering evidence not presented by the government, and which is not judicially noticeable. The district court's conclusion that §922(g)(9) is constitutional was in reliance upon the government's lack of evidence, and further improper evidence. The district court engaged in impermissible fact finding to support the conclusion of the government. The court

5

relied in part upon a law review article which was not admitted into evidence, was not subject to examination by defendant, and was not submitted in the government's brief. The article is not judicially noticeable and was not part of the evidentiary record. The court's reliance upon such evidence was improper and in error.

And finally, the lifetime ban on firearm possession in 18 U.S.C. §922(g)(9) is inconsistent with the tradition and history of the Second Amendment. There is no sufficient historical analogue for a permanent ban on firearm possession and ownership. The district court's conclusion that 'felons' and 'domestic' misdemeanants are analogous is unsupported. Further, the district court's conclusion that a permanent ban is constitutional, even if felons and domestic violence misdemeanants are analogous, is not supported. The government's failure to cite a single statutory authority which was contemporaneous with and consistent with a lifetime ban on firearm possession and ownership by a misdemeanant was not due to oversight. The provisions of 18 U.S.C. §922(g)(9) are encoded in recent legislation. The lack of evidence was moored to the reality of a lack of historical precedent.

6

<u>**ARGUMENT**</u>

**I.  THE GOVERNMENT FAILED TO MEET THE BURDEN OF
ESTABLISHING A HISTORICAL ANALOGUE CONSISTENT
WITH A PERMANENT BANISHMENT OF SECOND
AMENDMENT RIGHTS UNDER 18 U.S.C. § 922(g)(9).**

   **A.  The Standard of Review is *de novo* giving no difference to
district court's decision.**

On appeal, Court of Appeals reviews the constitutionality of a statute *de

novo*.  *United States v. Rodriguez*, 581 F.3d 775 (8th Cir. 2009).

   **B.  The government presented no competent evidence to meet the
burden required by *Bruen*.**

 In *New York Rifle and Pistol Ass'n. v. Bruen*, the Supreme Court unequivocally

stated it is incumbent upon the government to establish a regulation of the Second

Amendment Right to Bear Arms is constitutional by historical analogue.  *Bruen*, at

2127.  "The government must affirmatively prove that its firearms regulation is

part of the historical tradition that delimits the outer bounds of the right to keep and

bear arms." *Id*. at 2127.  The Supreme Court, expounding on Heller, held that

"[w]hen the Second Amendment's plain text covers an individual's conduct, the

Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2129–30.

In that context, the government bears the burden of "justifying its regulation by

demonstrating that it is consistent with the Nation's historical tradition of firearm

regulation." *Id*. at 2130.  Construing *Heller*, the Court flatly rejected any means-

end scrutiny as part of this analysis, such that if a statute is inconsistent with the

7

Second Amendment's text and historical understanding, then it falls under any circumstances. *Id*. at 2129.

*Bruen* articulated two analytical steps: First, courts must determine whether "the Second Amendment's plain text covers an individual's conduct[.]" 142 S. Ct. at 2129–30. If so, then the "Constitution presumptively protects that conduct," and the *Government* "must *justify* its regulation by *demonstrating* that it is consistent with the Nation's historical tradition of firearm regulation." Id. at 2130 (emphasis added). "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id*. The clear holding of *Bruen* establishes that to sustain [§922(g)(9)]'s burden on [appellant's] Second Amendment right, the Government bears the burden of proffering "relevantly similar" historical regulations that imposed "a comparable burden on the right of armed self-defense" that were also "comparably justified." *Rahimi*, 61 F. 4th 443, 455 (citing *Bruen* at 2132–33). "When it comes to interpreting the Constitution, not all history is created equal. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Id*. (citing *Bruen* at 2136). We thus afford greater weight to historical analogues more contemporaneous to the Second Amendment's ratification. *Id*. at 456.

The clear implications of *Bruen* is that when an individual challenges a regulation, the government has the burden of proof to establish the constitutionality

8

of such regulation. Burden of proof is defined as a party's duty to prove a disputed assertion or charge, and includes both the burden of persuasion and the burden of *production*. Blacks Law Dict., Bryan Garner, (2d Pocket Ed. 2001)(emphasis added). To carry its burden, the Government must present competent evidence of "historical precedent from before, during, and even after the founding [that] evinces a comparable tradition of regulation." *Id*. at 2131–32. The court is "… not obliged to sift the historical materials for evidence to sustain [§ 922(g)(9)]. That is [the Government's] burden." *Bruen* at 2150.

The issue presented to the District Court was whether a lifetime permanent ban, as outlined in 18 U.S.C. §922(g)(9), was constitutional. The operative facts include defendant Bernard having been convicted of a misdemeanor domestic abuse in 2002. (R. Doc. 3). No hearing was held in this matter, and the government presented no evidence.

The government submitted a brief in response to the motion. The government argued that domestic violence was a 'long-recognized problem', and those convicted were 'sufficiently akin to felons'. No evidentiary connection to any felonious provisions which permanently proscribed firearm possession contemporaneously with the founding era was presented. The government cited to law review articles, recent statistics related to domestic violence, and archaic statutory provisions regarding general prohibitions against spousal abuse and

9

surety provisions. None of the cited provisions established a lifetime banishment on firearms rights. The information relied upon by the government fails to establish any historical support for permanent banishment of firearm possession related to misdemeanor conviction or spousal conflict, let alone misdemeanor spousal conflict.

When the challenged regulation addresses a "general societal problem that has persisted since the 18th century, the lack of a *distinctly similar* historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen*. at 2131 (emphasis added). While the government identified various code provisions that relate to sureties and general prohibitions against assault, none of these provisions established a lifetime banishment from firearm possession, or banishment from firearm possession at all. "If earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional." *Id*.

The government presented no evidence of a historical statutory 'twin', or even relevant historical analogue, and instead relied upon law review articles and contemporary statistics which were not admitted through the adversarial process nor subject to examination for credibility, relevance, or reliability. The government further pointed to two cases which had been recently decided from

10

other districts at the time of filing. Both *Nutter* and *Jackson* relied upon the same non evidence arguments, law review articles, and present-day statistics, with *Nutter* asserting that 'without domestic violence statistics', there was 'no mechanism to disarm domestic abusers in the founding era' a clear excusatory statement for the lack of historical analogues. (R. Doc. 68-1), *See United States v. Nutter*, No. 2:21-cr-142, 2022 WL3718518 (S.D. W.Va. Aug. 29, 2022).

Evidence of non-evidence, is not evidence. In this regard, the government failed. The government presented no evidence historical analogues contemplated by *Bruen* to meet their burden. The government's 'evidence' is nothing of the sort and should be rejected as sufficient justification for permanent proscriptions of fundamental constitutional rights.

## II. The district court erred in concluding the permanent ban on firearm possession outlined in 18 U.S.C. §922(g)(9) is consistent with the Nation's Tradition of Firearm Regulation.

### A. The Standard of Review is *de novo* giving no difference to district court's decision.

On appeal, Court of Appeals reviews the constitutionality of a statute *de novo*. *United States v. Rodriguez*, 581 F.3d 775 (8th Cir. 2009)

### B. No comparable burden which is comparably justified exists to support the conclusion that the permanent proscription of firearm possessions by persons convicted of misdemeanor offenses 18 U.S.C. §922(g)(9) is constitutional

11

The district court correctly concluded that 18 U.S.C. §922(g)(9) regulates conduct protected by the Second Amendment and firearm possession is conduct protected by the Second Amendment. (R. Doc. 71). However, the court's analysis of the history and tradition of firearm regulation in the United States in this matter was in error. In an era of Revolution, Indian wars, and frontier expansion, that a government looked upon firearms in a manner consistent with the modern-day view of second-class right is unsupported by history or law. The constitutional right to bear arms is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald*, 561 U.S. at 780, 130 S.Ct. 3020 (plurality opinion).

In *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637, and *McDonald v. Chicago*, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894, the Court held that the Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense. *Bruen's* focus on the individual right which is established by the Second Amendment coupled with the burden of proof promulgated by *Bruen* suggests that any challenge to regulatory provisions should be challenges as applied to the defendant. *See Bruen*, *Heller*, generally. Nevertheless, the standard pronounced in *Bruen* requires an analogous historical record to support a regulation of individual firearm rights. Construing *Heller*, the Court flatly rejected any means-end scrutiny as part of this analysis, *Id*. at 2129,

12

such that if a statute is inconsistent with the Second Amendment's text and historical understanding, then it falls under any circumstances.

To evaluate the challenged law, the Supreme Court employed a historical analysis, aimed at "assess[ing] whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Bruen* at 2131. The Supreme Court distilled two metrics for courts to compare the Government's proffered analogues against the challenged law: how the challenged law burdens the right to armed self-defense, and why the law burdens that right. Id. at 2133 (citing *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767 (2010) and *Heller*, 544 U.S. at 599). Because "individual self-defense is 'the *central component*' of the Second Amendment right," these two metrics are " '*central*' " considerations when engaging in an analogical inquiry. *McDonald*, 561 U.S. at 767, 130 S.Ct. 3020 (quoting *Heller*, 554 U.S. at 599, 128 S.Ct. 2783). The Second Amendment guarantees an "individual right to possess and carry weapons in case of confrontation," *Heller*., at 592, 128 S.Ct. 2783. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Heller*, 554 U.S. at 634–635, 128 S.Ct. 2783. The Second Amendment was adopted in 1791; the Fourteenth in 1868. Historical evidence that long predates or postdates either time may not illuminate the scope of the right. *Bruen* at 2119.

13

Bruen articulated two analytical steps: First, courts must determine whether "the Second Amendment's plain text covers an individual's conduct[.]" 142 S. Ct. at 2129–30. If so, then the "Constitution presumptively protects that conduct," and the Government "must justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2130. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id*. To carry its burden, the Government must point to "historical precedent from before, during, and even after the founding [that] evinces a comparable tradition of regulation." Id. at 2131–32. "[W]e we are not obliged to sift the historical materials for evidence to sustain [§ 922(g)(8)]. That is [the Government's] burden." Id. at 2150. The Government must identify a "well-established and representative historical analogue". Id. at 2133. The question is "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." Id. As to the degree of similarity required, "analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check." Id.

In *D.C. v. Heller*, the Court addressed District of Columbia firearm regulations which proscribed possession of a firearm in the home. In concluding such regulations were unconstitutional, the Court stated:

14

'the enshrinement of constitutional rights necessarily takes certain policy choices off the table. These include the absolute prohibition of handguns held and used for self-defense in the home. Undoubtedly some think that the Second Amendment is outmoded in a society where our standing army is the pride of our Nation, where well-trained police forces provide personal security, and where gun violence is a serious problem. That is perhaps debatable, but what is not debatable is that it is not the role of this Court to pronounce the Second Amendment extinct.

*Heller*, at 636. Bruen expanded upon Heller, concluding that the Second Amendment protects not only the possession of a firearm in the home, but also public carry. *See Bruen generally*. Nevertheless, any distinction between public and private possession under the Second Amendment is not recognized by §922(g)(9).

The language of 18 U.S.C. 922 (g)(9) states:

(g) It shall be unlawful for any person-

(9) who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. 922(g)(9) (2022). Proof that a firearm or any part of the firearm travelled in interstate commerce is sufficient to establish interstate or foreign commerce. *U.S. v. Scarborough,* 431 U.S. 563 (1977); *See* 18 U.S.C. §921(a)(3) & (30). The combination of the commerce clause, and firearm and handgun definitions expand the reach of §922 to virtually all firearms and component parts

15

of firearms.  In the Eighth Circuit, a person can be convicted of a violation of 18 U.S.C. §922(g)(9) for possession of a firearm, regardless of whether it is in public, in the home, by actual possession, or by constructive possession.  *See Generally U.S. v. Boyd*, 180 F.3d 967 (8th Cir. 1999); *U.S. v. Boykin*, 986 F.2d 270 (8th Cir. 1993).  The holdings of the 8th Circuit, as well as other circuits, that the possession in the home as well as in public, constructive as well as actual, is violative of §922 expands the reach to any and all interaction with a firearm, anywhere.  There exists no exception in the code for 'possession for self-defense in the home' or other reasonable limitations on the proscriptions.  *See* 18 U.S.C. §922.  Further, the banishment is permanent.  There are no provisions for reinstatement.

Nevertheless, in this matter, the Court concluded such permanent and absolute prohibition is consistent with firearm traditions in the United States.  The Court anchored the opinion to a conclusion that 'domestic violence misdemeanants are relevantly similar to felons such that they can be denied weapons for the same reasons.'  (R. Doc. 71).  The conclusion stemmed from the Court's reading of a law review article from 2020 regarding the 'Home-Centric' Second Amendment post *Heller* and the potential impact of changes in Second Amendment law upon women.  (R. Doc. 71).  A reading of the article relied upon in part by the Court confirms exactly what the district court suggested in another part of its opinion, that there are no historical analogous permanent prohibitions to be relied upon.

16

The author of the law review article, Joseph Blocher, argues that firearm rights may be considered to be stronger in the home post *Heller*. However, the author reiterated,

> To be clear, the argument is not against the constitutionality of DV prohibitors or the right of battered women to defend themselves with arms. In practice, courts are likely to consider the question at a somewhat broader level of generality, and conclude that DV misdemeanants are relevantly similar to felons, and can be denied weapons for the same reasons. **The point is that the test of text, history, and tradition makes that conclusion – which is plainly correct under any plausible reading of the Amendment – an exercise in strained analogies.**

Joseph Blocher, *Domestic Violence and the Home-Centric Second Amendment*, 27 Duke J. Gender L. & Pol'y 45, 55-56 (2020).

The Court further relied upon *Perez-Gallan*, which specifically points out "Domestic abusers are not new. But until the 1970s, government intervention – much less removing an individual's firearms – because of domestic violence practically did not exist." *United States v. Perez-Gallan*, 640 F. Supp.3d 697, 703 (2022). The Court in *Perez-Gallan* goes on to review in some detail a variety of historical provisions relating to domestic abuse. *See Id*. The Court explains that in an 'almost 200 year period' identified in the Plymouth Colony court record, only 12 cases involving wife beating were prosecuted. *Id*. at 703. Another study of the six New England colonies from 1630 to 1699 confirmed the same—only 57 wives and 128 husbands were tried on charges of assault. *Id*. at 704-04. As society

17

advanced, removal of firearms was still not something entertained as a result of domestic violence, with the majority of domestic disturbance matters being resolved with a fine.  *Id*. at 704-05.  What's more, prominent domestic violence researchers agree that even into the early twentieth century, judges were "more likely to confiscate a wife beater's liquor than his guns."  *Id*. at 705 (citing Carolyn B. Ramsey, *Firearms in the Family*, 78 Ohio St. L.J. 1257, 1301 (2017)).

Further the district court placed reliance upon language from Justice Barrett's dissent in *Kanter v. Barr*, where now Supreme Court Justice Barrett stated:

> The historical evidence does, however, support a different proposition: that the legislature may disarm those who have demonstrated a proclivity for violence or whose possession of guns would otherwise threaten the public safety.  This is a category simultaneously broader and narrower than "felons" – it includes dangerous people who have not been convicted of felonies but not felons lacking indicia of dangerousness.

919 F.3d 437, 454, 456-58 (7th Cir., 2019).  However, Barrett went on to state:

> The best historical support for a legislative power to *permanently* dispossess all felons would be founding-era laws explicitly imposing – or explicitly authorizing the legislature to impose – such a ban.  But at least thus far, scholars have not been able to identify any such laws.

*Id*. (emphasis added).  Barrett's dissent delineates between felons and those who possess 'indicia' of dangerousness.  This is a distinction the Court did not engage, and did not identify any historical source for an analysis to the contrary.  Everything which was cited by the Court establishes there is no historical

18

analogues or precedent for a permanent ban on firearm ownership or possession which is contemporaneous with the founding era.

The district court's conclusion is not based in historical fact, and in fact is contrary to the support provided in the opinion. The provisions of 18 U.S.C. 922(g)(9) are not longstanding, having been enacted by Congress in 1996. Nothing cited by the Court establishes a 'distinctly similar' provision in effect at the relevant time. The Court's opinion fails to identify any historical tradition, aside from bare assertion of historical tradition.

Since the decision of the district court in this matter, the 8th Circuit has considered the application of the Second Amendment to felons post *Bruen* in *United States v. Jackson,* 69 F.4th 495 (8th Cir. 2023) and *United States v. Cunningham,* 70 F.4th 502 (8th Cir. 2023). In *Jackson*, the Court determined that the 922(g)(1) was not unconstitutional as applied to Jackson, relying upon language from *Heller*. The 8th Circuit concluded that nothing in *Heller* should be taken to cast doubt upon longstanding prohibitions against felons possessing firearms. *Jackson*, 69 F.4th at 501 (citing *Heller*, 554 U.S. 570, 626). The 8th Circuit thus concluded, there is no need to review the constitutionality of 922(g)(1) on a felony-by-felony basis. *Jackson*, 69 F.4th at 507. The Court reaches this conclusion in reliance upon a history of deprivation of firearm possession by certain groups of individuals, including Native Americans and Catholics. The

19

court in reliance in part on *Range v. Attorney General of the United States*, 53

F.4th 262, 3rd Cir. (Pa.), Nov. 16, 2022, determined that a broad understanding of

historical regulations supported a conclusion that firearm possession can be

restricted based upon status.  However, *Range* was subsequently reheard en banc,

and the Third Circuit concluded there was not historical support for such

prohibitions.  *See Range*, 69 F.4th 96, 3rd Cir.(Pa.), June 06, 2023.  In fact, the

court in *Range* ultimately determine

> That Founding-era governments disarmed groups they distrusted like
> Loyalists, Native Americans, Quakers, Catholics, and Blacks does nothing to
> prove that Range is part of a similar group today.  And any such analogy
> would be "far too broad[ ]." *See Bruen*, 142 S. Ct. at 2134 (noting that
> historical restrictions on firearms in "sensitive places" do not empower
> legislatures to designate any place "sensitive" and then ban firearms there).

*Range*, 69 F.4th at 105.  Regardless, this matter is not a prohibition related to a

prior felony, but rather a permanent prohibition based upon a misdemeanor

conviction.  Along with the Third Circuit, courts in the Fifth, Seventh, and Tenth

Circuits have also concluded provisions of 18 U.S.C 922(g) which dispossess

citizens of firearms are unconstitutional.  *See United States v. Rahimi*, 61 F. 4th 443

(5th Cir. 2023) (finding 18 U.S.C. §922(g)(8) unconstitutional)(cert granted143

S.Ct. 2688, U.S., June 30, 2023); *United States v. Prince*, United States District

Court, N.D. Illinois, Eastern Division, -- F.Supp.3d ---- 2023 WL 7220127

(November 2, 2023)(finding 18 U.S.C. §922(g)(1) unconstitutional); *United States*

20

*v. Harrison*, United States District Court, W.D. Oklahoma, --- F.Supp.3d ----2023 WL 1771138 (February 3, 2023)(finding 18 U.S.C. §922(g)(3) unconstitutional).

The constitutionality of a permanent ban pursuant to §922(g)(9) must be anchored to historical analogues which establish a tradition of firearm dispossession. What's more, it is the government's burden to present sufficient evidence of such traditions. *Bruen* at 2127. Nothing cited nor relied upon by the district court reaches that threshold. The opinion is completely devoid of support for the conclusion that the permanent ban outlined 18 U.S.C. §922(g)(9) is tethered to analogous proscriptions contemporaneous with the founding era. The district court in this matter failed to identify any historical analogue, let alone one that is 'distinctly similar' to the permanent ban in 922(g)(9). As such, the district court's denial of Bernard's Motion to Dismiss should be reversed.

## CONCLUSION

For the reasons asserted herein, Bernard's conviction in this matter should be overturned and this matter dismissed.

21

STOWERS & NELSEN PLC
West Glen Town Center
650 South Prairie View Drive, Suite 130
West Des Moines, IA 50266
Phone: (515) 224-7446
Fax: (515) 225-6215
Email: james@stowersnelsen.com

By: ___/s/ James Nelsen
       James Nelsen
       ATTORNEY FOR APPELLANT
       Jae Bernard

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because Brief of Appellant contains 4,451 words, excluding parts of the motion exempted by Fed. R. App. P. 32(f). The brief uses a proportional space, 14-point Times New Roman font.

Appellate Case: 23-2808    Page: 29    Date Filed: 11/08/2023 Entry ID: 5334120

**CERTIFICATE OF SUBMISSION AND VIRUS SCAN**

I hereby certify that on this 7th day of November, 2023, I electronically submitted the Brief of Appellant with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system after scanning it for viruses by using the Vipre's Antivirus Virus Scan program, which reported no viruses found. Paper copies will be transmitted upon receipt of the Notice of Filing from the Clerk of Court.


_/s/ Amy Pille_____
Legal Assistant

Appellate Case: 23-2808    Page: 30    Date Filed: 11/08/2023 Entry ID: 5334120

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the _____ day of November, 2023, I mailed two copies of the Brief of Appellant by first-class mail deposited in the United States Mail, postage prepaid, addressed to the counsel of record listed below.

Emily Nydle
U.S. Attorney's Office
111 7th Avenue SE, Box 1
Cedar Rapids, IA  52401

STOWERS & NELSEN PLC
West Glen Town Center
650 South Prairie View Drive, Suite 130
West Des Moines, IA 50266
Phone: (515) 224-7446
Fax: (515) 225-6215

By:    _/s/ Amy Pille_____
       Legal Assistant

Date: November 7, 2023.

Appellate Case: 23-2808    Page: 31    Date Filed: 11/08/2023 Entry ID: 5334120