No. 23-2808

# IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

vs.

JAE BERNARD,

Defendant-Appellant.

*Appeal from the United States District Court*
*For the Northern District of Iowa*
*Honorable C.J. Williams, Judge*

## BRIEF OF APPELLEE

EMILY K. NYDLE
Assistant United States Attorney
Northern District of Iowa
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa 52401
(319) 363-6333
(319) 363-1990 (Fax)
Emily.Nydle@usdoj.gov

## SUMMARY OF THE CASE

Defendant Jae Bernard appeals the district court's denial of his motion to dismiss his charge under 18 U.S.C. § 922(g)(9). He argues that the statute is facially unconstitutional.

Oral argument is unnecessary, but if it is granted, ten minutes would be sufficient.

i

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE ....................................................................i

TABLE OF CONTENTS ......................................................................ii

TABLE OF AUTHORITIES ..................................................................iv

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF THE ISSUE................................................................1

STATEMENT OF THE CASE ...............................................................2

    Relevant Procedural History...........................................................2

    Ruling Presented for Review ..........................................................4

    Statement of the Facts ..................................................................4

SUMMARY OF THE ARGUMENT ........................................................6

ARGUMENT .....................................................................................7

    The District Court Did Not Err in Denying Defendant's
    Motion to Dismiss Where 18 U.S.C. § 922(g)(9) Is Facially
    Constitutional..............................................................................7

    A.    Standard of Review ..............................................................7

    B.    18 U.S.C. § 922(g)(9) Is Constitutional After *Bruen* ..............7

        1.    The Constitutional Right to Bear Arms Only
            Covers Law-Abiding Citizens and It Does Not
            Apply to Persons Convicted of Domestic Abuse .........13

        2.    18 U.S.C. § 922(g)(9) Is Consistent With the
            Nation's Tradition of Firearm Regulation...................19

Appellate Case: 23-2808    Page: 3    Date Filed: 02/01/2024    Entry ID: 5359291

C.    The District Court Did Not Abuse Its Discretion by Not Having a Hearing Where Defendant Did Not Ask for One .................................................................. 27

CONCLUSION ................................................................ 30

CERTIFICATE OF FILING AND SERVICE .......................... 31

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ............................................................ 32

Appellate Case: 23-2808    Page: 4    Date Filed: 02/01/2024 Entry ID: 5359291

# TABLE OF AUTHORITIES

**Cases**                                                   **Page**

**Federal Cases**

*Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023) ....................... 12, 13

*Binderup v. Attorney General*, 836 F.3d 336 (3d Cir. 2016) .................. 17

*District of Columbia v. Heller*, 554 U.S. 570 (2008)
...................................................7, 8, 12, 13, 14, 15, 16, 18, 21, 22, 24

*Drummond v. Robinson Twp.*, 9 F.4th 217 (3d Cir. 2021) .................... 10

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019).................................... 17, 22

*McDonald v. Chicago*, 561 U.S. 742 (2010) ............................. 7, 8, 12, 14

*New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022)
.................................................1, 2, 8, 9, 10, 13, 14, 15, 17, 23, 24, 27

*United States v. Bena*, 664 F.3d 1180 (8th Cir. 2011) ...... 1, 11, 18, 19, 20

*United States v. Booker*, 644 F.3d 12 (1st Cir. 2011).............................. 22

*United States v. Chester*, 628 F.3d 673 (4th Cir. 2010) .......................... 22

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) ........................ 22

*United States v. Cooley*, 63 F.4th 1173 (8th Cir. 2023) .......................... 29

*United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023) .......................... 29

*United States v. English*, 329 F.3d 615 (8th Cir. 2003)........................... 13

*United States v. Flores*, 663 F.3d 1022 (8th Cir. 2011) ................... 16, 17

*United States v. Goins*, 2022 WL 17836677 (E.D. Ky. Dec. 21, 2022).... 17

Appellate Case: 23-2808     Page: 5     Date Filed: 02/01/2024   Entry ID: 5359291

*United States v. Hammond*, 656 F. Supp. 3d 857 (S.D. Iowa 2023) ........................................................................................ 12, 20, 21

*United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023) ............... 1, 21, 22

*United States v. Polanco-Gomez*, 841 F.2d 235 (8th Cir. 1988) ............. 29

*United States v. Portillo-Munoz*, 643 F.3d 437 (5th Cir. 2011) ............. 16

*United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023) ........ 13, 15, 16, 17

*United States v. Salerno*, 481 U.S. 739 (1987) ................................ 11, 12

*United States v. Santos-Pulido*, 815 F.3d 443 (8th Cir. 2016) ............. 29

*United States v. Seay*, 620 F.3d 919 (8th Cir. 2010) ........................... 7, 11

*United States v. Sitladeen*, 64 F.4th 978 (8th Cir. 2023) ............ 1, 16, 17

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) .............. 20, 21, 22

*United States v. Staten*, 666 F.3d 154 (4th Cir. 2011) ........................... 22

*United States v. Stevenson*, 727 F.3d 826 (8th Cir. 2013) ...................... 29

*United States v. Walker*, 709 F. Supp. 2d 460 (E.D. Va. 2010) ............. 22

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ................................... 11

*Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008) ............................................................................. 11

*Young v. Hayes*, 218 F.3d 850 (8th Cir. 2000) ...................................... 17

**State Cases**

*State v. Davis*, 3 Brev. 5 S.C.L. 3 (S.C. Const. Ct. App. 1811) .............. 27

**Federal Statutes**

18 U.S.C. § 921(a)(33)(A) .......................................................................... 18

Appellate Case: 23-2808    Page: 6    Date Filed: 02/01/2024 Entry ID: 5359291

18 U.S.C. § 922(g)(1) ................................................................ 21

18 U.S.C. § 922(g)(5)(A) ..................................................... 16, 17

18 U.S.C. § 922(g)(8) ...................................................... 11, 18, 20

18 U.S.C. § 922(g)(9) .................. 1, 2, 4, 6, 7, 10, 18, 19, 20, 21, 24, 27, 28

18 U.S.C. § 3231 ...................................................................... 1

28 U.S.C. § 1291 ...................................................................... 1

## Other Authorities

Act of Apr. 20, 1745, ch. III, 23 *The State Records of North Carolina*
218-19 (1904) ...................................................................... 21

An Act for the Punishment of Certain Crimes Against the United
States, Pub. L. No. 1-9, § 14, 1 Stat. 112, 115 (1790) ........................ 21

*The Bill of Rights: A Documentary History*, 665 (1971) ........................ 21

*Cruel & Unusual: The American Death Penalty and the Founders'
Eighth Amendment* 56-57 (2012) ............................................... 22

*A Digest of the Laws of Maryland* 255-56 (1799) ................................ 22

*Laws and Ordinances of New Netherland*, 138 (1868) ........................... 21

*Penal Measures in the American Colonies: An Overview*, 26 Am. J.
Legal Hist. 326, 330-32, 342, 344-47 .......................................... 22

*The State Records of North Carolina*, ch. III, 23 218-19 (1904) ........... 21

*The Statutes at Large; Being a Collection of all the Laws of Virginia*
302-03 (1821) ...................................................................... 22

*Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y
695 32 Harv. J.L. & Pub. Pol'y 695 (2009) ................................... 20

Appellate Case: 23-2808    Page: 7    Date Filed: 02/01/2024 Entry ID: 5359291

# JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. On July 28, 2023, the court entered final judgment, and on August 8, 2023, defendant filed a timely notice of appeal. This notice was modified on August 9, 2023. This Court has jurisdiction over this criminal appeal pursuant to 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUE

***Whether the District Court Erred in Denying Defendant's Motion to Dismiss Where 18 U.S.C. § 922(g)(9) is Facially Constitutional?***

*New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022)

*United States v. Bena*, 664 F.3d 1180 (8th Cir. 2011)

*United States v. Sitladeen*, 64 F.4th 978 (8th Cir. 2023)

*United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023)

1

# STATEMENT OF THE CASE

## Relevant Procedural History

On January 6, 2022, the grand jury returned an indictment charging defendant in Count 1 with possession of firearms by a person convicted of a misdemeanor crime of domestic violence under 18 U.S.C. §§ 922(g)(9) and 924(a)(2).  (R. Doc. 3)[1].  Counts 2 and 3 of the Indictment charged defendant's co-defendant with aiding and abetting the possession of firearms by a person convicted of domestic violence and disposal of firearms to a prohibited person.  (R. Doc. 3).

On June 9, 2022, defendant pled guilty without a plea agreement. (R. Doc. 34; R. Doc. 35).  That same day, United States Magistrate Judge Mark A. Roberts filed a report and recommendation that the district court accept the guilty plea.  (R. Doc. 35).

On June 23, 2022, the United States Supreme Court decided *New York State Rifle and Pistol Association, Inc. v. Bruen*.  597 U.S. 1 (2022).

---

[1] "R. Doc." refers to the district court docket in case number 22-CR-00003, "Def. Brief" refers to defendant's opening brief, and "PSR" refers to the Final Presentence Investigation Report, found at R. Doc. 104; followed by page numbers.

Appellate Case: 23-2808    Page: 9    Date Filed: 02/01/2024 Entry ID: 5359291

On June 24, 2022, United States District Court Judge C.J. Williams accepted the report and recommendation, noting no objections by the parties. (R. Doc. 42).

On August 11, 2022, the United States Probation Office filed a draft presentence investigation report. (R. Doc. 45).

On September 19, 2022, defendant filed a motion to withdraw his guilty plea and dismiss the indictment. (R. Doc. 54). Defendant filed his objections to the draft presentence report on September 21, 2022. (R. Doc. 60). The government filed a resistance to defendant's motion on September 26, 2022. (R. Doc. 62). Defendant filed a reply brief on October 10, 2022. (R. Doc. 66).

On October 26, 2022, the magistrate judge issued a report and recommendation that the district court grant defendant's motion to withdraw his guilty plea. (R. Doc. 67). The report and recommendation did not address the motion to dismiss. (R. Doc. 67, at 1).

The government filed objections to the report and recommendation. (R. Doc. 68). Defendant did not file any objections.

On December 5, 2022, the district court issued an order overruling the government's objections to the report and recommendation, allowing

3

defendant to withdraw his guilty plea, and denying defendant's motion to dismiss. (R. Doc. 71). Defendant did not file any response or ask for a hearing.

On December 27, 2022, defendant entered a guilty plea pursuant to a conditional plea agreement allowing him to appeal the district court's ruling on the motion to dismiss. (R. Doc. 77; R. Doc. 78).

On July 26, 2023, defendant was sentenced to 37 months' imprisonment. (R. Doc. 115).

## Ruling Presented for Review

Defendant argues that the district court erred in denying his motion to dismiss his charge under 18 U.S.C. § 922(g)(9) as facially unconstitutional.

## Statement of the Facts

Defendant was convicted of domestic abuse assault causing bodily injury, on or about April 12, 2002, in the Iowa District Court for Iowa County. Beginning at least by 2019, defendant's co-defendant, Kori Hobbs, with whom defendant has been in a relationship since 2009, began buying guns. (PSR, at 4, 16). Hobbs acquired at least 22 firearms between May 2019 and August 2021. (PSR, at 4).

Appellate Case: 23-2808    Page: 11    Date Filed: 02/01/2024 Entry ID: 5359291

In 2021, Hobbs and defendant's juvenile son were involved in an incident where they attempted to sell a firearm to another juvenile. (PSR, at 5). One firearm purchased by Hobbs was located in a residence in Chicago 60 days after its purchase and another firearm was located in Urbandale, Iowa, 44 days after its purchase. (PSR, at 5).

Defendant would sometimes accompany Hobbs to various firearm stores. (PSR, at 6). Defendant stole firearm-related items from multiple stores. (PSR, at 17). His email was also used to purchase at least one firearm. (PSR, at 6).

On September 29, 2021, law enforcement officers searched defendant and Hobbs's residence. (PSR, at 8). During the search, law enforcement found multiple firearms, thousands of rounds of ammunition, a high-capacity magazine, and cell phones for defendant and Hobbs. (PSR, at 8).

During a post-*Miranda* interview, defendant admitted that Hobbs was buying guns but that she didn't know anything about them. (PSR, at 10). Defendant admitted that he sold guns to two individuals and that he had stolen gun parts and ammunition. (PSR, at 10).

5

## SUMMARY OF THE ARGUMENT

Under *Bruen*, § 922(g)(9) is facially constitutional. The Second Amendment protects the rights of law-abiding citizens. Defendant and others who violate § 922(g)(9), are not law-abiding citizens, and this statute regulates conduct that falls outside the scope of the Second Amendment. Section 922(g)(9) also is consistent with the nation's historical tradition of firearm regulation.

Finally, the district court did not commit a procedural error by considering law review articles, statistics, and "archaic" statutory provisions.

6

***The District Court Did Not Err in Denying Defendant's Motion to Dismiss Where 18 U.S.C. § 922(g)(9) Is Facially Constitutional***

### A. *Standard of Review*

This Court reviews the constitutionality of a statute de novo.

*United States v. Seay*, 620 F.3d 919, 923 (8th Cir. 2010).

### B. *18 U.S.C. § 922(g)(9) Is Constitutional After Bruen*

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that the Second Amendment protects the right of "law-abiding, responsible citizens" to keep firearms in their homes for self-defense. *Id.* at 635. But *Heller* clarified that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited" and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. *Heller* said that "nothing in [its] opinion should be taken to cast doubt" on certain "presumptively lawful regulatory measures," such as "longstanding prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places," and "laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27 & n. 26. In *McDonald v. Chicago,* 561 U.S. 742

7

(2010), a plurality of the Court again emphasized that applying the Second Amendment to the states "does not imperil every law regulating firearms." *McDonald*, 561 U.S. at 786 (opinion of Alito, J.).

In *New York State Rifle and Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court held that the Second Amendment protects the right of "ordinary, law-abiding citizens" to "carry a handgun for self-defense outside the home." *Id*. at 8-9. It struck down a New York license-to-carry law that "prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id*. at 71. But, as Justice Kavanaugh emphasized in concurrence, "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations." *Id*. at 80 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 636).

*Bruen* clarified the "standard for applying the Second Amendment." *Id*. at 24. First, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. Second, when the conduct is protected, "[t]he government must . . . justify its regulation by demonstrating

8

that it is consistent with the Nation's historical tradition of firearm regulation." *Id*.

The Court explained that, "[i]n some cases," the inquiry into "whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding" will "be fairly straightforward." *Id*. at 26. "For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id*. Similarly, the Court stated, "if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional." *Id*. at 26-27.

*Bruen* recognized, however, that "[t]he regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 . . . " *Id*. at 27. Thus, when considering "modern regulations that were unimaginable at the founding," the historical inquiry will "often involve reasoning by

9

analogy." *Id*. at 28. In "determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation," courts must determine "whether the two regulations are relevantly similar," which will involve considering "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id*. at 29 (citations and quotations omitted).

The Court emphasized that this "analogical reasoning . . . is neither a regulatory straightjacket nor a regulatory blank check." *Id*. at 30. "On the one hand, courts should not 'uphold every modern law that remotely resembles a historical analogue' . . . ." *Id*. (quoting *Drummond v. Robinson Twp*., 9 F.4th 217, 226 (3d Cir. 2021)). "On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Id*. "[E]ven if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id*.

Here, defendant made a facial challenge to 18 U.S.C. § 922(g)(9) in the district court, and he did not argue that the statute was unconstitutional as applied to him. (R. Doc. 54-1, at 4). The district

10

court correctly used the standard for facial challenges outlined in *United States v. Salerno*, 481 U.S. 739 (1987). (R. Doc. 71, at 11).

In *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008), the Supreme Court stated:

> Under *United States v. Salerno*, 481 U.S. 739, 107 S. Ct. 2095, 95 L.Ed.2d 697 (1987), a plaintiff can only succeed in a facial challenge by "establish[ing] that no set of circumstances exists under which the Act would be valid," *i.e.*, that the law is unconstitutional in all of its applications. Id., at 745, 107 S. Ct. 2095. While some Members of the Court have criticized the *Salerno* formulation, all agree that a facial challenge must fail where the statute has a "'plainly legitimate sweep.'" *Washington v. Glucksberg*, 521 U.S. 702, 739-740, and n. 7, 117 S. Ct. 2258, 138 L.Ed.2d 772 (1997) (STEVENS, J., concurring in judgments).

*Id.* at 449.

In *United States v. Bena*, 664 F.3d 1180 (8th Cir. 2011), in addressing a Second Amendment challenge to 18 U.S.C. § 922(g)(8), this Court employed the *Salerno* standard:

> To succeed on this facial challenge, Bena "must establish that no set of circumstances exists under which [§ 922(g)(8)] would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L.Ed.2d 697 (1987); *see also United States v. Seay*, 620 F.3d 919, 922 (8th Cir. 2010).

*Id.* at 1182.

Appellate Case: 23-2808     Page: 18     Date Filed: 02/01/2024 Entry ID: 5359291

*Bruen* did not alter the standard for sustaining facial constitutional challenges to gun laws. In *Bruen*, the Supreme Court did not cite *Salerno*.[2]

In *Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023), the Second Circuit rejected the argument that *Bruen* created an exception to the rules on facial and as applied challenges:

> The district court's reasoning seems to rely in part on its view that *Bruen* "create[d]" an "exception" to the normal

---

[2] In *United States v. Hammond*, 656 F. Supp. 3d 857 (S.D. Iowa 2023), the court stated, "*Bruen* never mentioned *Salerno*, and thus it is unclear whether the *Salerno* approach remains appropriate for facial challenges to firearms regulations." *Id.* at 861. Nevertheless, the court concluded that the *Salerno* standard still applied:

> The Court does not interpret *Bruen* as repudiating or undermining *Salerno*, particularly given the important structural difference between the firearms restrictions set forth in § 922(g) and the regulation at issue in *Bruen*. The latter (like the regulations in *Heller* and *McDonald* before it) prohibited <u>everyone</u> from exercising their Second Amendment rights except, at most, in relatively narrow circumstances if a citizen could show special need. In other words, the regulation started from the premise that no one could possess firearms for self-defense before making exceptions. The fact that *Bruen* struck it down as unconstitutional therefore presumably just means there is "no set of circumstances" in which a blanket ban on firearm possession that has no Founding-era analogue would be valid.

*Id.*

rules regarding facial and as-applied challenges, wherein it would "defy [the *Bruen*] standard for [a court] to find that such a law is inconsistent with history and tradition, just to watch it be saved by the one possible application that makes it constitutional." *See id.* at 305. We do not agree. It is highly unlikely that the Court upended longstanding principles of constitutional litigation by mere implication. Indeed, *Bruen* itself recognized the viability of as-applied challenges to licensing regimes, *see* 142 S. Ct. at 2138 n.9, a curious statement if the Court meant to eliminate the facial vs. as-applied distinction in Second Amendment cases.

*Id.* at 316.[3]

### 1. The Constitutional Right to Bear Arms Only Covers Law-Abiding Citizens and It Does Not Apply to Persons Convicted of Domestic Abuse

The Supreme Court has made abundantly clear that the Second Amendment protections only apply to law-abiding citizens.[4] In *Heller*, the Court stated that the Second Amendment "surely elevates above all

---

[3] During oral arguments in *United States v. Rahimi*, No. 22-915, some of the Justices addressed whether the prevailing rule regarding facial challenges applies in the Second Amendment context. *See Rahimi* Oral Argument Trans. 42-43, 62, 63 (Justice Gorsuch noting that, when determining whether a statute is facially constitutional, "we have to ask is it unconstitutional in all of its applications"); *id.* at 81-82 (Chief Justice Roberts noting the same).

[4] The district court disagreed with the government's position on this issue. (R. Doc. 71, at 11-13). This Court may affirm "on grounds supported by the record, even if those grounds were rejected by the trial court[.]" *United States v. English*, 329 F.3d 615, 617 (8th Cir. 2003) (citation omitted).

Appellate Case: 23-2808     Page: 20     Date Filed: 02/01/2024 Entry ID: 5359291

other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  554 U.S. at 635.

The Court referred to "ordinary, law-abiding citizens":

> In *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L.Ed.2d 637 (2008), and *McDonald v. Chicago*, 561 U.S. 742, 130 S. Ct. 3020, 177 L.Ed.2d 894 (2010), we recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense.  In this case, petitioners and respondents agree that ordinary, law-abiding citizens have a similar right to carry handguns publicly for their self-defense.  We too agree, and now hold, consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.

*Id.* at 8-10.

In *Bruen*, the Court reaffirmed this.  597 U.S. at 26.  It stated, "Nor is there any such historical tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense."  *Id* at 38 (footnote omitted).  It also stated, "New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense from exercising their right to keep and bear arms."  *Id* at 21; *See Id.* at 76 (Alito, J., concurring) ("I reiterate: All that we decide in this case is that the Second Amendment protects the right of law-abiding people to carry

14

a gun outside the home for self-defense and that the Sullivan Law, which makes that virtually impossible for most New Yorkers, is unconstitutional.").

*Bruen* carefully distinguished between constitutional, "shall-issue" licensing regimes that "require applicants to undergo a background check or pass a firearms safety course" and the "may-issue" regulation it held was unconstitutional. *Id.* at 38 n.9. "Shall-issue" regulations simply ensure that "those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Id.* (quoting *Heller*, 554 U.S. at 635); *see id.* at 2162 (Kavanaugh, J., concurring) (explaining that 43 states' "shall-issue licensing regimes are constitutionally permissible"). The Court's discussion of "shall-issue" regulations is consistent with the principle that "the people" possessing Second Amendment rights includes law-abiding citizens.

In *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *cert. granted*, 143 S. Ct. 2688 (2023), the Fifth Circuit rejected the government's argument. It stated, "*Heller* explained that the words 'the people' in the Second Amendment have been interpreted throughout the Constitution to 'unambiguously refer[ ] to all members of the political

15

community, not an unspecified subset.'" *Id.* at 451 (quoting *Heller*, 554 U.S. at 580). In the quoted language, the *Heller* Court was discussing the right to bear arms as an individual right that was not limited to members of a militia. 554 U.S. at 580-81.

In *United States v. Sitladeen*, 64 F.4th 978 (8th Cir. 2023), this Court held that 18 U.S.C. § 922(g)(5)(A), which prohibits any alien who is unlawfully present in the United States from possessing a firearm, was constitutional. *Id.* at 983-87. It stated, "*Bruen* does not address the meaning of 'the people,' much less the constitutionality of criminal firearm statutes like § 922(g)(5)(A)." *Id.* at 984. In reaffirming its previous decision in *United States v. Flores*, 663 F.3d 1022 (8th Cir. 2011), this Court reviewed other circuits' approaches to the meaning of "the people":

> Though the opinion is short on explanation, it is unmistakable that our holding in *Flores* is about the plain text of the Second Amendment—about what is meant by the phrase, "the people." *See* 663 F.3d at 1023. Unlike the Second, Seventh, Ninth, and Tenth Circuits, we did not reach our conclusion that § 922(g)(5)(A) is constitutional by engaging in means-end scrutiny or some other interest-balancing exercise. *See id.* Rather, as the unqualified language of the opinion and the citation to [*United States v.*] *Portillo-Munoz*[, 643 F.3d 437 (5th Cir. 2011)] make clear, we reached our conclusion by considering—consistent with what *Bruen* now requires—

16

whether the conduct regulated by § 922(g)(5)(A) was
protected by the plain text of the Second Amendment.
And we determined that it was not, as unlawfully present
aliens are not within the class of persons to which the phrase
"the people" refers. Nothing in *Bruen* casts doubt on our
interpretation of this phrase. *See* 142 S. Ct. at 2134 ("It is
undisputed that petitioners Koch and Nash—two ordinary,
law-abiding, adult citizens—are part of 'the people' whom
the Second Amendment protects."). Indeed, *Bruen* "decide[d]
nothing about who may lawfully possess a firearm." *Id.* at
2157 (Alito, J., concurring) (emphasis added). Therefore, we
remain bound by *Flores*. *See Young v. Hayes*, 218 F.3d 850,
853 (8th Cir. 2000) (discussing the prior-panel rule).

We recognize that other courts both before and after *Bruen*
have criticized *Flores*'s so-called "scope of the right"
approach, insisting that a textual analysis of "the people"
is not the right starting point when deciding whether a
firearm regulation violates the Second Amendment. *See*,
*e.g.*, *United States v. Rahimi*, 61 F.4th 443, 451-53 (5th Cir.
2023); *Kanter v. Barr*, 919 F.3d 437, 452-53 (7th Cir. 2019)
(Barrett, J., dissenting) ("[O]ne [approach] uses history and
tradition" to "say that certain people fall outside the
Amendment's scope," while "the other uses that same body
of evidence to identify the scope of the legislature's power to
take it away. In my view, the latter is the better way to
approach the problem." (emphasis removed)); *United States
v. Goins*, No. 22-cr-00091-GFVT-MAS-1, —— F. Supp. 3d ——
–, ——, 2022 WL 17836677, at *6 (E.D. Ky. Dec. 21, 2022).
*But see Binderup v. Attorney General*, 836 F.3d 336, 357
(3d Cir. 2016) (Hardiman, J., concurring in part) ("[T]he
Founders understood that not everyone possessed Second
Amendment rights. These appeals require us to decide who
count among 'the people' entitled to keep and bear arms.").

*Id.* at 985-86 (footnote omitted).

In *Bena*, this Court stated:

> *Heller* characterized the Second Amendment as
> guaranteeing "the right of *law-abiding, responsible* citizens
> to use arms in defense of hearth and home." *Id.* (emphasis
> added). Scholarship suggests historical support for a
> common-law tradition that permits restrictions directed
> at citizens who are not law-abiding and responsible. The
> Court's discussion is consistent with the view that in
> "classical republican philosophy, the concept of a right to
> arms was inextricably and multifariously tied to that of
> the 'virtuous citizen,'" such that "the right to arms does not
> preclude laws disarming the unvirtuous (i.e. criminals) or
> those who, like children or the mentally unbalanced, are
> deemed incapable of virtue."

664 F.3d at 1183 (citations omitted). Applying these principles to

§ 922(g)(8), this Court stated:

> Insofar as § 922(g)(8) prohibits possession of firearms by
> those who are found to represent "a credible threat to the
> physical safety of [an] intimate partner or child," 18 U.S.C.
> § 922(g)(8)(C)(i), it is consistent with a common-law tradition
> that the right to bear arms is limited to peaceable or
> virtuous citizens.

*Id.* at 1184.

In this case, defendant was convicted of a "misdemeanor crime

of domestic violence," 18 U.S.C. § 922(g)(9), a crime that "has, as an

element, the use or attempted use of physical force, or the threatened

use of a deadly weapon. . . ." 18 U.S.C. § 921(a)(33)(A)(ii). Defendant

Appellate Case: 23-2808    Page: 25    Date Filed: 02/01/2024 Entry ID: 5359291

is not a law-abiding citizen, and the protections of the Second

Amendment do not apply to him.

### 2. 18 U.S.C. § 922(g)(9) Is Consistent With the Nation's Tradition of Firearm Regulation

Even if the Court determines that "the people" includes persons

regulated by 18 U.S.C. § 922(g)(9), this statute is constitutional as

it falls within this nation's historical tradition of firearm regulation.

In *Bena*, this Court analyzed this nation's historical regulations

involving firearms.  Some of this analysis is outlined

above.  In addition, this Court stated:

> In the 1760s, Blackstone explained that English subjects enjoyed a right to have arms for their defense, "suitable to their condition and degree" and "under due restrictions." 1 William Blackstone, *Commentaries* *139.  This right and others, he recounted, were subject to "necessary restraints," viewed as "gentle and moderate," and designed to prevent "what would be pernicious either to ourselves or our fellow citizens."  *Id.* at *140.  Proposals from the Founding period reflect a similar understanding of the pre-existing right to bear arms.  A proposal of Samuel Adams at the Massachusetts Ratifying Convention would have forbidden Congress to prevent "the people of the United States, *who are peaceable citizens*, from keeping their own arms." Journal of Convention: Wednesday February 6, 1788, *reprinted in Debates and Proceedings in the Convention of the Commonwealth of Massachusetts Held in the Year 1788*, at 86 (Boston, William White 1856) (emphasis added). Pennsylvania delegates in 1787 similarly proposed a constitutional provision stating that "no law shall be passed

19

for disarming the people or any of them *unless for crimes committed, or real danger of public injury from individuals.*" The Address and Reasons of Dissent of the Minority of the Convention of Pennsylvania to their Constituents, *reprinted in* Bernard Schwartz, 2 *The Bill of Rights: A Documentary History* 662, 665 (1971) (emphasis added). *See generally* C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695 (2009).

*Id.* at 1183-84.

This Court's reasoning in *Bena* is consistent with *Bruen*, and it applies to defendant's challenge to 18 U.S.C. § 922(g)(9). In *Hammond*, the district court explained:

*Bena* carefully analyzed the "pre-existing right to bear arms" as it would have been understood in the Founding era and concluded there was "a common-law tradition that permits restrictions directed at citizens who are not law-abiding and responsible." *Id.* at 1183; *see also United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) ("That some categorical limits [on firearm possession] are proper is part of the original meaning [of the Second Amendment], leaving to the people's elected representatives the filling in of details."). *Bena* therefore upheld § 922(g)(8) against a facial constitutional challenge. 664 F.3d at 1184. In the process, importantly, *Bena* did not engage in the means-end scrutiny that the Supreme Court later held in *Bruen* to be improper.

If it remains good law, *Bena* clearly requires denial of Hammond's facial constitutional challenge. The only difference between the two cases is that *Bena* dealt with a challenge to § 922(g)(8), whereas Hammond is charged with violating § 922(g)(9). This difference is not material. If Congress can lawfully prohibit persons who are subject to a domestic violence restraining order from possessing

20

firearms, surely it can do the same for persons who have been convicted of a crime of domestic violence. *See Skoien*, 614 F.3d at 645 (denying facial and as applied challenges to § 922(g)(9)). If anything, the constitutionality of § 922(g)(9) is easier to defend given the additional due process protections that exist in criminal proceedings vis-à-vis the civil proceedings that give rise to protective orders.

656 F. Supp. 3d at 859-60.

In *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023), where this Court held that 18 U.S.C. § 922(g)(1) was constitutional as applied to the defendant, it again reviewed this nation's historical regulations involving firearms, and it again cited the Pennsylvania proposal from 1787:

The influential "Dissent of the Minority," *see Heller*, 554 U.S. at 604, 128 S. Ct. 2783, published by Anti-Federalist delegates in Pennsylvania, proposed that the people should have a right to bear arms "unless for crimes committed, or real danger of public injury from individuals." 2 Bernard Schwartz, *The Bill of Rights: A Documentary History* 665 (1971). Early legislatures also ordered forfeiture of firearms by persons who committed non-violent hunting offenses, *see* Act of Oct. 9, 1652, *Laws and Ordinances of New Netherland* 138 (1868); Act of Apr. 20, 1745, ch. III, 23 *The State Records of North Carolina* 218-19 (1904); and they authorized punishments that subsumed disarmament—death or forfeiture of a perpetrator's entire estate—for non-violent offenses involving deceit and wrongful taking of property. *See* An Act for the Punishment of Certain Crimes Against the United States, Pub. L. No. 1-9, § 14, 1 Stat. 112, 115 (1790); Act of Feb. 21, 1788, ch. 37, 1788 N.Y. Laws 664-65; Act of May 1777, ch. XI, 9 *The Statutes at Large; Being a*

21

> *Collection of all the Laws of Virginia* 302-03 (1821); *A Digest of the Laws of Maryland* 255-56 (1799); Stuart Banner, *The Death Penalty: An American History* 3, 18, 23 (2002); John D. Bessler, *Cruel & Unusual: The American Death Penalty and the Founders' Eighth Amendment* 56-57 (2012); Kathryn Preyer, *Penal Measures in the American Colonies: An Overview*, 26 Am. J. Legal Hist. 326, 330-32, 342, 344-47 (1982). While some of these categorical prohibitions of course would be impermissible today under other constitutional provisions, they are relevant here in determining the historical understanding of the right to keep and bear arms.

*Id.* at 503.

Following *Heller*, other courts of appeals accepted the argument that domestic abuse misdemeanants are sufficiently akin to felons that they too can be disarmed. *See Skoien*, 614 F.3d at 643-44; *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013); *United States v. Staten*, 666 F.3d 154, 158 (4th Cir. 2011); *United States v. Booker*, 644 F.3d 12, 23-25 (1st Cir. 2011); *United States v. Chester*, 628 F.3d 673, 680-81 (4th Cir. 2010). *See also United States v. Walker*, 709 F. Supp. 2d 460, 465-66 (E.D. Va. 2010); *Kanter v. Barr*, 919 F.3d 437, 454, 456-58 (7th Cir. 2019) (Barrett, J., dissenting) ("The historical evidence does, however, support a different proposition: that the legislature may disarm those who have demonstrated a proclivity for violence or whose possession of guns would otherwise threaten the public safety. This is a

category simultaneously broader and narrower than 'felons'—it includes dangerous people who have not been convicted of felonies but not felons lacking indicia of dangerousness.").

The *Bruen* Court stated that, where a modern regulation addresses "a general societal problem that has persisted since the 18th century," "the lack of a distinctly similar historical regulation"—or a historical regulation that addresses the problem "through materially different means"—could be "relevant evidence" that the statute is unconstitutional. 597 U.S. at 26-27. But *Bruen* did not suggest that a statute is unconstitutional simply because it involves a new way to address longstanding concerns. As *Bruen* recognized, some modern statutes implicate "unprecedented societal concerns," and some modern regulations "were unimaginable at the time of the founding." *Id.* at 27-28. Yet those statutes are constitutional if supported by an appropriate "historical analogue." *Id.* at 30. *Bruen* gave the example of historical laws prohibiting the carrying of firearms in "sensitive places" and said that "courts can use analogies to those historical regulations . . . to determine that modern regulations prohibiting the carry of firearms in new and analogous sensitive

23

places are constitutionally permissible." *Id*. at 30-31.  Thus, *Bruen* does not suggest that a statute is unconstitutional just because it targets a longstanding societal problem in a new way.

The statute targets a specific group—those who have been convicted of a crime of domestic violence—who fall within the broader class of dangerous persons who have always been within the government's power to regulate.  *In Bruen*, the Court stated, "Under the common law, individuals could not carry deadly weapons in a manner likely to terrorize others."  597 U.S. at 59.  Section 922(g)(9) is not like the regulations in *Heller* and *Bruen*, which sought to combat the "perceived societal problem" of "firearm violence in densely populated communities" by prohibiting most or all law-abiding citizens from keeping or carrying firearms.  *Id.* at 27.

The fact that this specific statutory means of preventing domestic violence is a relatively recent invention does not mean that § 922(g)(9) is unconstitutional.  In fact, history shows that other protections—most notably the common-law surety process—were long available to protect victims of domestic violence.

Appellate Case: 23-2808     Page: 31     Date Filed: 02/01/2024 Entry ID: 5359291

Blackstone observed that a husband "was prohibited to use any violence to his wife." 1 Blackstone 432. Thus, Blackstone said, "a wife may now have security of the peace against her husband; or, in return, a husband against his wife." *Id*. at 433. In one case that Blackstone cited, the wife "made oath in Court, that she was in danger of her life by [her husband]," and the court "offered to bind him with sureties," despite multiple affidavits attesting to the husband's "good usage" of his wife. *King v. Lord Lee*, 83 Eng. Rep. 482 (K.B. ca. 1675). In another, the husband swore out the peace against his wife. *Sims's Case*, 93 Eng. Rep. 1131 (1743-44). The English common-law system has thus allowed spouses to seek protection from abuse for centuries. *See also Lord Leigh's Case*, 84 Eng. Rep. 807 (1674) (the wife "upon affidavit of hard usage, and that she went in fear of her life, prayed security of the peace against [her husband], which was granted"); *Manby v. Scott*, 82 Eng. Rep. 1000, 1005 (Ex. 1659) (observing that a husband "cannot kill" his wife, "nor can he beat her, for the wife can seek the peace"), as translated by Henry Ansgar Kelly, "Rule of the Thumb and the Folklaw of the Husband's Stick," 44 J. Legal Ed. 341, 354 (1994); Sir Thomas Seymor's Case, 72 Eng. Rep. 966 (K.B. ca. 1615) ("[A] wife can have the

25

peace against her husband for unreasonable correction."), as translated by Kelly, 44 J. Legal Ed. at 355.

In America, "the Massachusetts Bay and Plymouth colonies had laws against spouse beating." Carolyn B. Ramsey, "The Stereotyped Offender: Domestic Violence and the Failure of Intervention," 120 Penn. State L. Rev. 337, 344 (2015). For example, the Massachusetts Body of Liberties provided that "[e]verie marryed woeman shall be free from bodilie correction or stripes by her husband, unless it be in his owne defence upon her assalt." Massachusetts Body of Liberties § 80 (1641) (found in original text at https://oll.libertyfund.org/page/1641-massachusetts-body-of-liberties). Although other colonies did not protect spouses by statute, America's first family law treatise observed that a husband or wife's "violation of each other's rights, by an unjustifiable violence, is a breach of the laws of society, for which they are liable criminaliter." Tapping Reeve, The Law of Baron and Femme; of Parent and Child; of Guardian and Ward; of Master and Servant; and of the Powers of Courts of Chancery 65 (New Haven, Oliver Steele 1816). The treatise explained that a husband or wife "may institute a process against each other, the object of which is to

compel them to find securities for their good behavior." *Id.* at 65-66; *see also State v. Davis*, 3 Brev. 5 S.C.L. 3, 4 (S.C. Const. Ct. App. 1811) ("It is clear that a wife may demand sureties of the peace against her husband, and so may her husband against her."). While § 922(g)(9) may be a recent means of protecting victims of domestic violence, there are historical analogues that allowed spouses to be protected from domestic violence.

Section 922(g)(9)'s prohibition on those who have been convicted for domestic violence sits at the intersection of the longstanding history of the prevention of domestic violence and the equally longstanding history of disarming those who pose a danger to others. Those who have been convicted of a crime of domestic violence pose a specific type of danger that has been regulated for centuries, as described above. The disarming of those convicted of misdemeanor crimes of domestic violence is constitutional under *Bruen*.

### C. *The District Court Did Not Abuse Its Discretion by Not Having a Hearing Where Defendant Did Not Ask for One*

In the argument summary section of defendant's brief, he claims:

The court committed procedural error by considering evidence not presented by the government, and which

Appellate Case: 23-2808    Page: 34    Date Filed: 02/01/2024 Entry ID: 5359291

is not judicially noticeable. The district court's conclusion that §922(g)(9) is constitutional was in reliance upon the government's lack of evidence, and further improper evidence. The district court engaged in impermissible fact finding to support the conclusion of the government. The court relied in part upon a law review article which was not admitted into evidence, was not subject to examination by defendant, and was not submitted in the government's brief. The article is not judicially noticeable and was not part of the evidentiary record. The court's reliance upon such evidence was improper and in error.

(Def. Brief at 5-6).

Defendant never directly discusses or addresses whether or not the district court committed a procedural error in the main portion of his brief, but he does discuss the government's alleged failure to present competent evidence to meet the burden required by *Bruen*. (Def. Brief at 7-10). As argued above, the government met its burden to show that § 922(g)(9) is constitutional.

As the magistrate judge noted in his report and recommendation, neither party requested a hearing. Defendant did not object to this. Following the district court's order denying the motion to dismiss, defendant did not file a request for a hearing and instead reentered his guilty plea to the offense.

"A district court must hold an evidentiary hearing only when the moving papers are sufficiently definite, specific,

Appellate Case: 23-2808   Page: 35   Date Filed: 02/01/2024 Entry ID: 5359291

and detailed to establish a contested issue of fact." *United States v. Stevenson*, 727 F.3d 826, 830 (8th Cir. 2013) (motion to suppress). "A hearing is not required if a dispute can be resolved on the basis of the record." *Santos-Pulido*, 815 F.3d at 446, quoting *United States v. Polanco-Gomez*, 841 F.2d 235, 237-38 (8th Cir. 1988).

*United States v. Cooley*, 63 F.4th 1173, 1176 (8th Cir. 2023).

Defendant argues that the government failed to present evidence and argues that citations to law review articles, statistics, and "archaic" statutory provisions was insufficient. (Def. Brief at 7-11). This argument is without merit. The Supreme Court in *Bruen* itself relied on, and favorably cited, law review articles and amicus briefs citing other sources in analyzing the gun regulation at issue in that case. *Id.* at 29-30, 36. Other courts have accepted the government's reliance on law review articles to support its burden under *Bruen* or have otherwise favorably cited or invoked law review articles. *See, e.g., United States v. Daniels*, 77 F.4th 337, 350-51 & nn. 31-34 (5th Cir. 2023).

Here, the district court did not abuse its discretion because no further "evidence" was needed. Defendant's motion was a facial challenge.

29

## CONCLUSION

For the above reasons, defendant's conviction should be affirmed.

Respectfully submitted,

TIMOTHY T. DUAX
United States Attorney

By: */s/ Emily K. Nydle*

EMILY K. NYDLE
Assistant United States Attorney
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa 52401
(319) 363-6333
(319) 363-1990 (Fax)
Emily.Nydle@usdoj.gov

Appellate Case: 23-2808    Page: 37    Date Filed: 02/01/2024 Entry ID: 5359291

## CERTIFICATE OF FILING AND SERVICE

I certify that, on January 31, 2024, I electronically filed the foregoing brief with the Clerk for the Eighth Circuit Court of Appeals by using the CM/ECF system. The electronic brief and the addendum attached to the brief, if any, have been scanned for viruses using McAfee and the scan showed no virus.

I further certify that, on _____, 2024, I submitted ten paper copies of the brief to the Clerk of Court and one paper copy to each party separately represented or proceeding pro se.

TIMOTHY T. DUAX
United States Attorney

By: */s/ RAL*

_____
Legal Assistant

Copies to:
James S. Nelsen
Stowers & Nelsen PLC
West Glen Town Center
650 S. Prairie View Drive, Suite 130
West Des Moines, Iowa 50266

31

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I certify that the foregoing brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief uses a proportional-spaced typeface, fourteen-point Century Schoolbook font. Based on a count under Microsoft Word for Windows, the brief contains 6,150 words, excluding the parts of the brief exempted by Rule 32(f).

TIMOTHY T. DUAX
United States Attorney

By: */s/ Emily K. Nydle*

_____
EMILY K. NYDLE
Assistant United States Attorney

Appellate Case: 23-2808    Page: 39    Date Filed: 02/01/2024 Entry ID: 5359291